BOURLAND *v.* SOUTHARD.

Opinion delivered April 18, 1932.

*George W. Dodd,* for appellant.

*Simmons & Lister* and *A. M. Dobbs,* for appellee.

MEHAFFY, J. This suit was begun by property own-ers in Paving District No. 11 of the city of Fort Smith against the Board of Improvement and Henry C. Lane, as collector of the district. The appellees who brought this suit are owners of real property in the district, and brought the suit for themselves and others similarly situated.

The appellants, who were defendants below, are Fa-gan Bourland, mayor; Earl Henderson, commissioner No. 1, and W. H. Vaughan, commissioner No. 2, of the city of Ft. Smith, who constitute the board of improve-ment for said district.

The district was organized to pave certain streets, and benefits were assessed and levied against the prop-erty of appellees and others, and appellees have paid all their assessments.

The bonds which were sold have all been paid, the district does not owe any debts, and it has on hand $1,200 or more which belong to the taxpayers of the district who paid the last assessment, among whom are the appellees.

It was alleged that the appellants had failed and neglected to make this distribution, and failed and neglected to petition the chancery court for an order directing what disposition to make of said funds. Appel-lees alleged that the appellants had wrongfully and ille-gally expended certain funds of the district amounting to $300. It was alleged that the accounts of the district were complicated, and the amount of funds which should remain in the district could not be correctly determined without an accounting. It was also alleged that the ap-pellants, unless restrained, would continue to wrong-fully expend the funds of the district to pay the general expenses of the city.

The appellees asked for an accounting and a refund of the money belonging to the taxpayers, an injunction against further expenditures, and appellants be required to distribute the amounts due to taxpayers. The answer denied all the material allegations of the complaint as to liability.

Fort Smith has a commission form of government, organized under act No. 13 of the Acts of 1913. That act provided for the election of a mayor and four commissioners. In 1917 there was an amendment reducing the number of commissioners to three.

The act providing for commission form of government, among other things, provides that the mayor and commissioners elected shall constitute the respective boards of improvement for any and all improvement districts in the city operating under the provisions of the act, and shall discharge and perform all duties required of any board or boards of any improvement district or districts, but shall receive no compensation as members of such board or boards.

They are required to take separate oaths as members of the boards of improvement, and each of them is also required to make a bond for the benefit of all improvement districts. The act also requires that the records, papers and contracts of the improvement district shall be kept separate from the records, papers, contracts and property of the city, and that the funds, accounts, and deposits of the improvement districts shall be kept separate.

It is also provided in act No. 13, *supra,* that every board of improvement district shall quarterly print in pamphlet form a detailed and itemized statement of all receipts and expenditures of each respective district with proper vouchers for all payments, and cause to be filed with the clerk of the circuit court not less than 100 copies of such report, 10 copies of which the said clerk shall furnish to the city library, 5 to each daily newspaper published in the city, and retain 5 in his office.

The same section which provides for this detailed and itemized statement also provides that any taxpayer may, within six months, file exceptions to such report in the chancery court. It provides for an examination of such report and account, and that the chancery court shall disallow any and all unjust, illegal, or improper charges and credits.

The chancery court found that there were $1,300 of the funds of the district in the hands of the commissioner that should be distributed to the taxpayers, and directed that said amount be distributed to the taxpayers who had paid the last and final assessment of benefits, in such proportion as said sum of $1,300 bears to the amount of the last and final assessment of benefits, less a reasonable sum to be charged for the distribution thereof, and less cost of the action.

The chancellor also found that the appellants owed $216 of money wrongfully expended by the commissioners.

There was no appeal taken from the order and decree of the court for a distribution of the funds on hand, but this appeal is prosecuted to reverse the judgment for $216.

Since there is no appeal from the decree for the distribution of the $1,300, this part of the decree is not before us for consideration. The only question for our consideration being whether appellants were liable for the $216 which they were adjudged to pay.

The authority to levy and collect assessments on real property in towns and cities, is found in § 27 of article 19 of the Constitution. That section reads as follows: ''Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessments shall be *ad valorem* and uniform.''

Numerous questions are discussed by counsel which are not now properly before this court for consideration. The right of the taxpayers to a distribution, the time within which the court should close the affairs of the district and order a distribution, the power and right of the board after the lapse of a reasonable time, are all settled by the decree of the court ordering a distribution from which there is no appeal.

The question for us to determine is whether the commissioners had the right to expend any of the funds of the improvement district to pay a part of the salaries of certain officers in the employ of the city or to expend the funds for any purpose other than the cost of construction, engineering and legal services.

The provision of the Constitution above referred to authorizes assessments on real property under such regulations as may be prescribed by law.

Section 5656 of Crawford & Moses' Digest provides for the plans for improvements, and, among other things, provides: "For this purpose said board may employ such engineers and other agents as may be needed, and may provide for their compensation, which, with all other necessary expenditures, shall be taken as a part of the cost of improvement."

The commissioners could not lawfully expend any money collected from the taxpayers except that which was necessary, as a part of the cost of construction. When Improvement District No. 11 was formed under the Constitution and laws, a majority of the taxpayers agreed to it. A majority must have consented in order to form a district.

Under the law existing at that time they consented to assessments which were necessary in the cost of the construction of the improvement, and the taking or appropriating of any part of the assessments collected for any other purpose would be a violation of the Constitution.

This court, in discussing a special act of the Legislature, with reference to funds of an improvement district, said: "The majority of the court are of the opinion that

the special act of the General Assembly is unconstitutional, as authorizing a diversion of funds collected for one purpose to be appropriated to another use, as an improvement district organized to construct streets has no authority to use funds collected for that purpose to thereafter appropriate any portion thereof for purposes of repair, and the special act did not confer that authority because it was not based upon the consent of the taxpayers of the city, as required by the Constitution. In other words, to create an improvement district for the purpose of building or repairing streets in a city, the consent of the taxpayers must first be obtained in the manner provided by law, and the authority conferred by the original petition under which the district was formed could not be subsequently enlarged by legislative enactment to which the taxpayers had not consented.'' *Paving Dist. No. 5* v. *Fernandez,* 142 Ark. 21, 217 S. W. 795. This same case was before this court again where the question of distribution was discussed at length, but that question, as we have said, is not involved here.

While this court has held that the provision of the Constitution that no money arising from a tax levied for one purpose shall be used for any other purpose has no application to assessments in improvement districts, it is stated: ''The basis of our decision in that case was that the consent of owners of property to the construction of the original improvement being necessary under the Constitution (art. 19, § 27), funds arising from taxes levied on benefits could not be used for any other purpose without the consent of the owners of the property.'' *McAdams* v. *Henley,* 169 Ark. 97, 273 S. W. 355, 41 A. L. R. 629.

This court held that the property owners in a local improvement district had interest in the funds of the district, and that it was an impairment of their vested rights for the Legislature to enact a law to divert the funds to uses other than for the benefit of the owners. Of course, if the Legislature could not pass such a law, the law-making body of the city could not.

Again this court said: "In short, improvement district taxes can only be levied to the extent that the benefits conferred are equal to or exceed the amount of the special taxes levied. Therefore, so far as improvement districts are concerned, we conclude that the individual landowners have vested rights which cannot be impaired by subsequent legislative enactment." *Bauer* v. *North Ark. Highway Imp. Dist. No. 1,* 168 Ark. 220, 270 S. W. 533.

This court has many times held that the only theory justifying local assessments on real property is that the real property assessed is benefited in an amount equal to or greater than the assessment. There is therefore no authority for collecting assessments for any purpose other than the construction of the improvement, and this includes incidental expenses that are necessary to making the improvement.

The commissioners cannot therefore lawfully expend any of the money of the improvement district for general expenses of the city or for paying employees or officers of the city. If they could require the improvement district to pay any part of the expenses of the city, they could require it to pay all. The taxpayers of the district can be required to pay the assessments only because their property is benefited equal to the amount they have to pay.

It is contended by the appellant, however, that the appellees were guilty of laches in failing to take timely exceptions to the report of the board. The law requires the board of improvement to cause to be filed with the clerk of the circuit court certain numbers of copies as mentioned above, of the report, and the same section provides that any taxpayer may, within six months, file exceptions to such report. Acts 1913, p. 82, § 23.

The evidence shows that the report was not filed with the clerk of the circuit court, and it is sufficient to say that the taxpayer had a right to assume that he could file any exceptions or bring a suit within six months after the filing of the report at the place where it was

required to be filed, and, as no such report was filed with the clerk of the circuit court, the taxpayer would not be required to file exceptions to said report.

This court has said that notices of this kind are for the benefit of the landowners, and that giving of the notice is jurisdictional. The giving of the notices provided for in the act authorizing a commission form of government is for the benefit of the landowner, and he is not guilty of laches in failure to bring a suit within the time mentioned in the statute, when the report was not filed with the clerk as required by law. See *Sudberry v. Graves,* 83 Ark. 344, 103 S. W. 728.

It is finally contended that the chancellor gave judgment for two or three small items improperly, and that the decree for $216 should have been for not more than $191. The amount of the money erroneously expended was a question of fact, and we cannot say that the finding of the chancellor was against the preponderance of the evidence.

It is urged that the method employed by the commissioners in the city of Ft. Smith is reasonable and economical. This appears from the evidence to be true, and, so far as the evidence shows, the affairs of the district have been properly administered with the exception of appropriating certain sums of money belonging to the district for the payment of city expenses, and this, as we have already said, it could not lawfully do.

The decree of the chancery court is affirmed.